IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **DOLLY VARDEN MANAGEMENT, INC. AND PAUL FAIRBROOK, PLAINTIFFS,** § § § § | |
| **V.** § § | **CIVIL ACTION NO.:** 5:21-CV-1 |
| **CITY OF UNIVERSAL CITY; AND KIM TURNER, AND JACLYN REDMON, in their individual capacities.** § § § § § § **DEFENDANTS.** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

This action is brought for injunctive relief and damages pursuant to 42 U.S.C. §1983 based upon the continuing violations of the rights of Plaintiffs, Paul Fairbrook ("Mr. Fairbrook" herein) and Dolly Varden Management, Inc. ("Dolly Varden" herein) (Mr. Fairbrook and Dolly Varden are collectively referred to herein as the "Plaintiffs" and, individually, a "Plaintiff"), under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Jurisdiction exists pursuant to 28 U.S.C. § 1331 and 1343 based on 42 U.S.C. § 1983 and questions of federal constitutional law. Supplemental jurisdiction over Plaintiffs' state law claims is pursuant to 28 U.S.C. §1367. Each and all of the acts (or threats of acts) alleged herein were done by defendants, or their officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, customs, and usages of the City of Universal City (the "City").

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this suit because the suit arises under the United States Constitution ("Constitution") and presents a federal question within this Court's jurisdiction

pursuant to Article III of the Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3). This suit is brought in relevant part pursuant to 42 U.S.C. § 1983. Additionally, the claims that do not present a federal question in this lawsuit are (1) intrinsically related to the federal claims, and (2) are part of the same case or controversy, and are therefore appropriate for supplemental jurisdiction under 28 U.S.C. § 1367(a).

2. Venue in the Western District of Texas is proper pursuant to 27 U.S.C. § 1391(b)(1) because Bexar County, Texas is where the Defendants reside. Venue is also proper in this district pursuant to 27 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in the City of Universal City, Texas, which is within the Western District of Texas.

## PARTIES

3. Plaintiff Dolly Varden Management, Inc. ("Dolly Varden" herein) is a Delaware Corporation that manages, operates, and leases Randolph Plaza Apartments located at 1009 Pat Booker Road, Universal City, Texas 78148 ("Randolph Plaza"), and Villa Mesa Apartments, located at 135 Village Drive, Universal City, Texas 78148 ("Villa Mesa").

4. Plaintiff Paul Fairbrook ("Mr. Fairbrook" herein) is an individual and is also the president and general manager of Dolly Varden.

5. Defendant City of Universal City (the "City") is a municipal corporation organized under the laws of the State of Texas, and is a corporate entity capable of being sued and being sued. Defendant City maintains and operates the City of Universal City Code Compliance and Development Services which, in the first instance, is responsible for the enforcement of the ordinance in question, and can be served with citation through the Mayor of the City of Universal City, Mayor John Williams, at 2150 Universal City Boulevard, Universal City, Texas 78148.

6. Defendant Jaclyn Redmon ("Defendant Redmon" herein), an individual, was a Building Official with the City of Universal City, a Texas municipality, at all pertinent times and during all pertinent periods, and can be served with citation at 2150 Universal City Boulevard, Universal City, Texas 78148.

7. Defendant, Kim Turner ("Defendant Turner" herein), an individual, was an Official with the City of Universal City, a Texas municipality, at all pertinent times and during all pertinent periods, serving as the Assistant City Manager and City Manager, and can be served with citation at 2150 Universal City Boulevard, Universal City, Texas 78148.

8. This is an action pursuant to Title 42 U.S.C. § 1983, as the Defendant has committed actions which discriminate against Plaintiff, and has subjected Plaintiff to disparate treatment, thus causing financial harm and violating Plaintiff's constitutional rights.

## FACTUAL BACKGROUND

9. "Mr. Fairbrook" is the President and General Manager of Rose Housing, Inc. ("Rose Housing") and Adrian David, Inc. ("Adrian David, Inc."), which both own real property located in the City of Universal City, Texas.

10. Rose Housing owns Randolph Plaza Apartments, located at 1009 Pat Booker Road, Universal City, Texas 78148 ("Randolph Plaza"), having purchased it on or around June 23, 2006. Adrian David, Inc. owns Villa Mesa Apartments, located at 135 Villa Drive, Universal City, Texas 78148 ("Villa Mesa"), having purchased it in or around 2011.

11. Mr. Fairbrook is also the President and General Manager of Dolly Varden Management, Inc. ("Dolly Varden"). Dolly Varden manages Randolph Plaza and Villa Mesa (collectively referred to herein as the "Apartment Complexes"), and also leases the Apartment Complexes from Rose Housing and Adrian David, Inc.

12. Additionally, Mr. Fairbrook is a duly licensed general contractor with the City of Universal City.

13. On or about December 11, 2018, Mr. Fairbrook, on behalf of Randolph Plaza, sent a letter to the City of Universal City (herein referred to as the "City") in order to address a series of issues Randolph Plaza was experiencing with Universal City's waste removal provider. Mr. Fairbrook asserted in this letter that the provider constituted a "city approved Monopoly Trash provider" and boldly, albeit ill advisedly, proclaimed that "[o]wning a business in Universal [City] is a little like having the options a whore would have in a small Texas town where the Sheriff, Judge and brothel owner all work together."

14. The City responded by mailing a letter to Mr. Fairbrook, which was dated December 27, 2018 and which constituted a retaliatory and vindictive attack on Mr. Fairbrook. The letter asserted one hundred eight (108) allegations of violations found at Randolph Plaza, including mostly cosmetic repairs, but also including wholly unsubstantiated allegations of structural issues with the foundation and stairwell of each building at Randolph Plaza. The City demanded that the foundation, the second-floor walks and all stairways be evaluated by a structural engineer. There was no failure or visual damage to any of these structures where a reasonable person would believe that they needed evaluation. Mr. Fairbrook and his designees after receiving the letter requested, separately requested numerous times that Defendant Redmon or her designee to meet at Randolph Plaza and show them what was concerning about the structures cited. She refused to meet them and then later refused to speak or meet with the structural engineer that Mr. Fairbrook was forced to hired. The structural engineering firm found no deficiencies in the structures and issued letters to that effect that were given to the City. In fact, the structural engineer

found it difficult to ascertain what structural problems the City had wanted reviewed by an engineer. The engineering evaluation cost Dolly Varden approximately $10,000.00.

15. When Mr. Fairbrook attempted to procure permits to address the cosmetic repairs in early 2019, the City refused to issue permits to Mr. Fairbrook. David Torres, Mr. Fairbrook's authorized agent, attempted to pull permits for the repairs and, while doing so, overheard Defendant Turner instruct an individual, presumably the clerk, not to issue any permits to Randolph Plaza.

16. The City withheld the permits requested by Plaintiff to perform the work necessary to bring the property into compliance, holding the permits hostage while demanding that Plaintiff hire a structural engineer to evaluate the foundations and stairwells.

17. In January or February of 2019, a consultant, Eloy Rosales ("Mr. Rosales"), was hired in an attempt to help Plaintiffs Mr. Fairbrook and Dolly Varden resolve the issues Plaintiffs were having with the City regarding Randolph Plaza. Mr. Rosales was included on an internal email string of the City, ostensibly inadvertently, which provided the clear instruction by Defendant Turner not to issue permits to Plaintiff.

18. Furthermore, the necessity of hiring of Mr. Rosales was an additional cost incurred by Dolly Varden because of the refusal by Defendant Redmon and Turner to address the complaints they had alleged and to issue permits until the structural engineering evaluation was completed.

19. Eventually, realizing Plaintiff had been left no choice, Plaintiff expended approximately Ten Thousand Dollars and 00/100 ($10,000.00) hiring a structural engineer pursuant to the City's demands. Upon arrival at the property and after surveying the property's structural components, the structural engineer found it difficult to ascertain what structural

problems the City had wanted reviewed by an engineer. The structural engineer, Mr. Fairbrook, and David Torres all attempted to contact the City to discuss what structural issues the City had found in order to have them evaluated and addressed by the structural engineer; however, the City failed and/or refused to discuss its structural concerns with the engineer, Mr. Fairbrook, or David Torres.

20. On May 29, 2019, after not being able to get anyone from the City to come out to the Property to address the alleged foundation issues, the structural engineer submitted his Structural Evaluation of Foundations, despite no evidence of structural issues being present.

21. In or around December 2019, the City became aware that a flue on a hot water heater was not correctly installed at Villa Mesa. When the City learned that Mr. Fairbrook was associated with Villa Mesa, Defendant Redmon made a demand that Villa Mesa replace all the hot water heaters even though all the other water heaters in the apartment complex were functioning properly. Dolly Varden was forced to hire attorneys to refute Defendant Redmon's unfounded claims.

22. In or around April 2020, the City became aware that a water leak occurred in an apartment in Villa Mesa. Defendant Redmon demanded all the sheetrock be removed that had been installed in the repair, then went on to demand that all the rafters needed to be replaced as well as the roof. Dolly Varden was forced to hire an architect to refute the City's and Defendant Redmon's unfounded and arbitrary claims. The claims were unfounded and arbitrary because both the roof and the rafters were in excellent condition and did not require replacement. Dolly Varden incurred expenses hiring attorneys and an architect to refute these unfounded and capricious claims.

23. Also in 2018, the City constructed a giant splash pad adjacent to the Randolph Plaza apartment complex and, in 2019, diverted the water from said splash pad on and across Plaintiff's property.

## CAUSES OF ACTION AGAINST THE CITY

A. **Deprivation of Rights Secured by Federal law, 42 U.S.C. § 1983 (Procedural Due Process; Substantive Due Process; Equal Protection)**

24. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

25. By arbitrarily, capriciously, and vindictively asserting frivolous violations against Plaintiff, demanding unnecessary repairs, forcing Plaintiff to expend thousands of dollars, and diverting water from the water park across the parking lot of Plaintiff, the City deprived Plaintiff of one or more vested property rights protected by the United States Constitution. Among other things, the City imposed an unnecessary and burdensome encumbrance on the Property through the issuance of one hundred eight alleged violations on the property of Randolph Plaza.

26. When the City asserted frivolous violations, refused Plaintiff permits to address the alleged violations, forced Plaintiff to expend thousands of dollars unnecessarily, and diverted water across the property of Plaintiff, the City was acting under color of state or local law, and was acting pursuant to an established custom, policy or practice.

27. Through its actions, the City has deprived Plaintiff of one or more rights, privileges, or immunities secured by the Constitution and laws of the United States. Specifically:

   a. Procedural Due Process. Plaintiff has been deprived of its Fourteenth Amendment right to procedural due process through the abuse of process perpetrated by the City which forced Plaintiff to expend thousands of dollars in response to the City's arbitrary demands. *John Corp. v. Houston*, 214 F.3d 573, 577 (5th Cir. 2000)

(procedural due process ensure that government will "follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property'" (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

b. <u>Substantive Due Process</u>. Plaintiff has a constitutionally protected property interest in operating its business. *See Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 221 (5th Cir. 2012). Plaintiff has been deprived of its Fourteenth Amendment right to substantive due process, including but not limited to the right to be free of arbitrary and unlawful governmental interference with private property rights. *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 248-49 (5th Cir. 2000).

c. <u>Equal Protection</u>. Plaintiff has been deprived of its Fourteenth Amendment right to equal protection because the City has intentionally treated Plaintiff in a manner different from similarly-situated persons, with no rational basis for the difference in treatment. "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. Of Willowbrook v. Olech*, 528 U.S. 1073 (2000) (per curiam) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). Pursuant to the Fourteenth Amendment of the United States Constitution, "[n]o State shall…deny to any person…the equal protection of the laws." A similar constraint has been implied against the federal government via the Fifth Amendment of the United States Constitution. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954). The Equal Protection Clause of the Fourteenth Amendment directs States to treat "all persons similarly

situated" alike. The Equal Protection Clause is violated by intentional discrimination, which implies that *Id*. The Fifth Circuit Court recognizes personal vindictiveness as a type of class-of-one claim. *Lindquist v. City of Pasadena*, 656 F. Supp. 2d 662, 685 (S.D. Tex. 2009). There is no rational relationship between the disparity of treatment and some legitimate governmental purpose in the Defendant's treatment towards Plaintiff.

d. The City does not enjoy sovereign immunity for claims brought pursuant to 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 702 (1978).

B. **Attorneys' Fees (42 U.S.C. § 1988)**

28. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

29. As a result of the acts and omissions of the City, Plaintiff has been required to retain the law firm of Carroll & Hinojosa, PLLC to enforce its rights, and has agreed to pay the firm a reasonable fee for its services. Plaintiff has incurred, and will continue to incur, reasonable attorneys' fees and expert fees, which Plaintiff seeks to recover as damages from the City pursuant to 42 U.S.C. § 1988.

**CAUSES OF ACTION AGAINST REDMON AND TURNER**

A. **Deprivation of Rights Secured by Federal law, 42 U.S.C. § 1983 (Procedural Due Process; Substantive Due Process; Equal Protection)**

30. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs.

31. Each of Defendants Redmon and Turner (collectively, the "City Officials") facilitated and participated in carrying out various arbitrary, capricious, and vindictive acts against Plaintiff, as more specifically set forth above. By doing so, the City Officials deprived Plaintiff of

one or more vested property rights protected by the United States Constitution. Among other things, the City Officials' actions imposed an unnecessary and burdensome encumbrance on the Property through the issuance of one hundred eight alleged violations on the property of Randolph Plaza.

32. When the City Officials carried out the various arbitrary, capricious, and vindictive acts against Plaintiff complained of herein, each was acting under color of state or local law.

33. Through their actions, the City Officials have deprived Plaintiff of one or more rights, privileges, or immunities secured by the Constitution of the United States. Specifically:

    a. <u>Procedural Due Process</u>. Plaintiff has been deprived of its Fourteenth Amendment right to procedural due process through the abuse of process perpetrated by the City Officials which forced Plaintiff to expend thousands of dollars in response to the City's arbitrary demands. *John Corp. v. Houston*, 214 F.3d 573, 577 (5th Cir. 2000) (procedural due process ensure that government will "follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property'" (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

    b. <u>Substantive Due Process</u>. Plaintiff has been deprived of its Fourteenth Amendment right to substantive due process, including but not limited to the right to be free of arbitrary and unlawful governmental interference with private property rights. *Simi Inv. Co. v. Harris County*, 236 F.3d 240, 248-49 (5th Cir. 2000).

    c. <u>Equal Protection</u>. Plaintiff has been deprived of its Fourteenth Amendment right to equal protection because the City has intentionally treated Plaintiff in a manner different from similarly-situated persons, with no rational basis for the difference in treatment. "The purpose of the equal protection clause of the Fourteenth

Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. Of Willowbrook v. Olech*, 528 U.S. 1073 (2000) (per curiam) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). Pursuant to the Fourteenth Amendment of the United States Constitution, "[n]o State shall…deny to any person…the equal protection of the laws." A similar constraint has been implied against the federal government via the Fifth Amendment of the United States Constitution. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954). The Equal Protection Clause of the Fourteenth Amendment directs States to treat "all persons similarly situated" alike. The Equal Protection Clause is violated by intentional discrimination, which implies that *Id*. The Fifth Circuit Court recognizes personal vindictiveness as a type of class-of-one claim. *Lindquist v. City of Pasadena*, 656 F. Supp. 2d 662, 685 (S.D. Tex. 2009). There is no rational relationship between the disparity of treatment and some legitimate governmental purpose in the Defendant's treatment towards Plaintiff.

34. When the City Officials engaged in the conduct complained of, they were not acting within the scope of their discretionary authority.

35. Alternatively, assuming *arguendo* that one or both of the City Officials was acting within the scope of her discretionary authority, such City Officials' conduct was objectively unreasonable in light of clearly established law of which she either knew or should have known. Each of the City Officials participated in and facilitated the arbitrary, capricious, and vindictive acts against Plaintiff. Each of the City Officials knew, or reasonably should have known, that the

acts were arbitrary, capricious, and vindictive, that the allegations were manufactured against Plaintiff as retribution for Plaintiff's December 11, 2018 letter, and that harm was resulting to Plaintiff.

### B. Punitive Damages for Violation of Rights Secured by Federal Law (42 U.S.C. § 1983)

36. Plaintiff incorporates each and every allegation set forth in the preceding paragraphs.

37. The conduct of the City Officials harmed Plaintiff and was malicious, oppressive, or in reckless disregard of Plaintiff's rights. Their conduct involved unnecessary harshness or severity by exceeding, misusing, and/or abusing the authority granted to them.

38. Plaintiff is entitled to punitive damages against each of the City Officials.

### C. Attorneys' Fees (42 U.S.C. § 1988)

39. Plaintiff incorporates each and every allegation set forth in the preceding paragraphs.

40. As a result of the acts and omissions of the City Officials, Plaintiff has been required to retain the law firm of Carroll & Hinojosa, PLLC to enforce its rights, and has agreed to pay the firm a reasonable fee for its services. Plaintiff has incurred, and will continue to incur, reasonable attorneys' fees and expert fees, which Plaintiff seeks to recover as damages from the City pursuant to 42 U.S.C. § 1988.

### CONTINUING VIOLATION DOCTRINE

41. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

42. The acts by the City and the City Officials were unconstitutional and constitute a continuing violation over the last two years amounting to a single wrong, thereby triggering the

continuing violation doctrine. *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Ledbetter v. Goodyear Tire & Rubber Corp. v. Morgan*, 127 S. Ct. 2162 (2007). The cumulative effect on Plaintiff of the harassing, arbitrary, vindictive, and capricious conduct by the City and the City Officials, rather than a single incident alone, has caused Plaintiff significant harm. *Loumiet v. United States*, 828 F.3d 935, 948 (D.C. Cir. 2016) *quoting Page v. United States*, 729 F.2d 818, 821-22 (D.C. Cir. 1984). The acts of the City and the City Officials described in this Complaint which violated the constitutional rights of Plaintiff have continued since they first began upon Mr. Fairbrook's receipt of the December 27, 2018 letter from the City in or around early January of 2019, having happened as recently as approximately June 2020 when Defendant Redmon demanded the rafters and roof be replaced at Randolph Plaza. Because of the ongoing policy by the City and City Officials to violate Plaintiff's constitutional rights, and because the most recent act is action in furtherance of that ongoing policy, the continuing violation doctrine should apply.

## POLICY/RATIFICATION

43. Plaintiff restates, re-alleges, re-avers, and hereby incorporates by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

44. The City of Universal City is liable for Plaintiff's Constitutional wrongs suffered as Defendant Turner is a policy maker for her government employers.

45. Furthermore, despite all the wrongs perpetrated, no City of Universal City Officials have received any discipline or consequence in response to their actions. The failure of the City of Universal City to discipline or assign consequences to the City Officials effectively ratifies their actions as policy of the City of Universal City.

## ATTORNEYS' FEES

46. Plaintiff requests payment of its reasonable attorneys' fees and costs. Plaintiff is entitled to recover reasonable and necessary attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988(b) and (c).

## RESERVATION OF RIGHTS

47. Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

48. Plaintiff now seeks and requests an award granting the following relief: Actual and consequential damages; all statutory damages; all reasonable and necessary attorneys' fees through the time of trial, and such further attorneys' fees in the event this matter is appealed; all expert fees and costs; all statutory interest; all costs of Court and in all appellate courts; pre-judgment and post-judgment interest at the highest rate allowed by law; and all such other and further relief, general and special, legal and equitable, to which Plaintiff may be justly entitled.

## PRAYER

49. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the Defendant be cited to appear and answer herein, and, upon final hearing therefore, Plaintiff be awarded a judgment against Defendant for all the damages in an amount in excess of the minimum jurisdictional limits of this Court, reasonable attorneys' fees as allowed by statute, expenses and costs together with costs of court, exemplary damages, punitive damages for violation of rights secured by federal law, and pre-judgment and post-judgment interest at the highest legal rate, and any and all further relief to which Plaintiff may be justly entitled at either law or equity.

Date:  <u>January 4, 2021</u>

Respectfully Submitted,

**CARROLL & HINOJOSA, PLLC**

*/s/ George E. Carroll*
GEORGE E. CARROLL
State Bar No. 00795883
2117 Pat Booker Road, Suite B
Universal City, Texas 78148
Phone: (210) 650-9074
Fax: (210) 650-3291


OF COUNSEL

*/s/ Robert H. Featherson*
ROBERT H. FEATHERSTON
State Bar No. 24004641
1150 N. Loop 1604 W., Suite 108-301
San Antonio, Texas 78248
Phone: (210) 279-3711

ATTORNEYS FOR PLAINTIFF